## In re MARYANOV et al.

District Court, E. D. New York. July 13, 1927.

**1. Bankruptcy ⬅️⮕56—Money judgment of state court after trial by justice and jury is "final judgment," constituting act of bankruptcy, notwithstanding pendency of appeal, where no stay taken (Bankruptcy Act, § 1 [Comp. St. § 9585]; Civil Practice Act N. Y. § 614).**

Money judgment of the state court against alleged bankrupt, entered after trial by a justice and jury, is a "final judgment" such as to constitute an act of bankruptcy within Bankruptcy Act, § 1 (Comp. St. § 9585), notwithstanding pendency of appeal, where no stay has been taken under Civil Practice Act N. Y. § 614; it not being necessary that judgment should be "conclusive."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

**2. Appeal and error ⬅️⮕1—Right of appeal is not inherent, but statutory.**

Right of appeal is not inherent; it is purely a matter of statute.

**3. Judgment ⬅️⮕216—Judgment after trial before justice and jury is not interlocutory merely because appeal has been taken, but no stay (Civil Practice Act N. Y. § 472).**

A judgment entered after trial before a justice and a jury wherein no stay has been taken is not interlocutory within Civil Practice Act N. Y. § 472, defining judgments as either final or interlocutory, simply because an appeal has been taken.

**4. Bankruptcy ⬅️⮕11—Bankruptcy proceedings are in nature of proceedings in equity.**

Proceedings in bankruptcy generally are in the nature of proceedings in equity.

**5. Bankruptcy ⬅️⮕56—Federal District Court cannot review judgment of state court against alleged bankrupt, but will treat it as final until contrary appears.**

Federal district court cannot review judgment of state court against alleged bankrupt from which appeal has been taken, in proceeding to determine whether he is in fact bankrupt, but will treat the judgment as final until the contrary appears.

**6. Bankruptcy ⬅️⮕56—Insolvent debtor, failing to vacate money judgment within 30 days, is as to another creditor guilty of act of bankruptcy, even though appeal without stay is taken (11 U. S. C. A. § 21a, subd. 4).**

Insolvent debtor who permits creditor to obtain money judgment which he has not vacated or discharged within 30 days is as to other creditor guilty of act of bankruptcy within 11 U. S. C. A. § 21a, subd. 4, even though appeal, but no stay, has been taken by the alleged bankrupt.

**7. Bankruptcy ⬅️⮕56—Statute making it act of bankruptcy for debtor to fail to discharge judgment has not changed purpose of law to prevent preference (11 U. S. C. A. § 21a, subds. 3, 4).**

11 U. S. C. A. § 21a, subd. 4, making it an act of bankruptcy to permit creditor to obtain judgment and fail to discharge it within 30 days, has not changed the purpose of bankruptcy law, as evidenced by section 21a, subd. 3, making it act of bankruptcy to fail to discharge judgment within five days before sale thereunder; the purpose in both cases being to prevent preference.

**8. Bankruptcy ⬅️⮕76(3)—Sole judgment creditor cannot avail himself of debtor's failure to discharge judgment as act of bankruptcy (11 U. S. C. A. § 21a, subd. 4).**

Sole judgment creditor who has obtained a judgment in state court against alleged bankrupt cannot avail himself of the debtor's failure to discharge it within 30 days, as required by 11 U. S. C. A. § 21a, subd. 4, as an act of bankruptcy in petition for involuntary adjudication.

**9. Bankruptcy ⟨⟩11—Bankruptcy proceedings are not mere supplementary proceedings to execution in state court.**

Bankruptcy proceedings are not mere additional remedy in the nature of supplementary proceedings to an execution in the state court, but are in the nature of a general suit in equity contemplating aid to all the creditors.

**10. Bankruptcy ⟨⟩56—Transfer of property by alleged bankrupts to wives three or four years before petition, and without proof of fraud, held not act of bankruptcy.**

Transfer of property by alleged bankrupts to wives three or four years before the petition without proof that the transfer was illegal or fraudulent, or explanation of creditor's delay in reducing debt to judgment, would not be considered act of bankruptcy.

**11. Bankruptcy ⟨⟩69—Trial in bankruptcy court may properly result in individual, instead of partnership, liability (Bankruptcy Act, § 5, subd. h [Comp. St. § 9589]).**

A trial in a bankruptcy court against a partnership and its members alleged to be bankrupt may properly result in individual, instead of partnership, liability under Bankruptcy Act, § 5, subd. (h) (Comp. St. § 9589), since in bankruptcy matters the individual and the partnership are "entities," separate and distinct from each other.

**12. Bankruptcy ⟨⟩54—Insolvency alone is insufficient to warrant involuntary adjudication of bankruptcy.**

Insolvency alone without distinct act of bankruptcy is insufficient to require an adjudication in involuntary proceedings.

In Bankruptcy. In the matter of Jacob Maryanov and Joseph Maryanov, individually and as copartners trading as the American Shirt & Overall Manufacturing Company, alleged bankrupts. On petition of Morris Janowitz for an involuntary adjudication of bankruptcy. Decree in accordance with opinion.

Cecil B. Ruskay, of New York City (Percival E. Jackson, of New York City, of counsel), for petitioner.

Louis R. Bick, of Brooklyn, N. Y., for Jacob Maryanov.

Archibald Palmer, of New York City, for alleged bankrupts.

INCH, District Judge. This is a trial by the court, without a jury (the latter having been duly waived), of issues arising by reason of the filing of an involuntary petition to have the above-named persons adjudicated bankrupts individually and as copartners, and the answer of said alleged bankrupts.

The record of the trial is decidedly informal, but this condition is of little consequence, as the controversy does not depend upon the disputed facts, but arises over questions of law.

The petition in bankruptcy is filed by a single creditor, Morris Janowitz.

So far as I can see, there are no other creditors of either the partnership or Jacob Maryanov.

About six years ago Janowitz and the above alleged bankrupts had certain dealings that appear to have been mutually unsatisfactory, and as a result certain legal proceedings were taken in the state of Pennsylvania. On or about January 28, 1927, in a common-law action, subsequently commenced by the above alleged bankrupts against Janowitz, in the Supreme Court, county of New York, state of New York, in which action the said Janowitz had interposed a counterclaim (this legal quarrel being an offshoot of the already mentioned Pennsylvania matter), a jury brought in a verdict, on said counterclaim, against the said alleged bankrupts (plaintiffs), in favor of the said Janowitz (defendant), and a judgment was entered by him against the said bankrupts individually and as copartners in the sum of approximately $7,300. Execution was issued and returned unsatisfied.

[1] The main contention in the briefs of both parties to this bankruptcy suit centers about the cause of action of said plaintiffs in the state trial and their present claim that the said judgment of the state court, entered after the trial by a justice and jury, was and is not a "final" judgment, because an "appeal" therefrom has been taken by the plaintiffs. In other words, that Janowitz has not obtained a "judgment" within the meaning of the Bankruptcy Act such as would constitute an "act of bankruptcy" by the alleged bankrupts.

Congress has not defined the particular kind of "judgment" that does or does not constitute an "act" (section 1 of the National Bankruptcy Act [Comp. St. § 9585]), nor does this seem necessary, in view of the intention plainly expressed by the different provisions of the act.

In the view I take of this case it is immaterial, so far as Joseph Maryanov is concerned, whether Janowitz is a "judgment" creditor or not. As to the others, while I fail to see what difference it would make whether the judgment was "final" or not, as long as it did or might result in a preference, and an unequal distribution of the bankrupt's property, yet, assuming counsel for the alleged bankrupts to be correct, that such judgment must be a "final" judgment to constitute an act of bankruptcy, I consider such judgment is a "final" judgment.

It adjudicated the ultimate rights of the

parties; whether correctly or not is not for this court to determine. Each of the partners were liable jointly and separately, and the form of judgment appears to be that approved by the state court. Judd Oil Co. v. Hubbell, 76 N. Y. 543.

The mere fact that the statutes of the state give a right of appeal to the defeated party does not take away the finality of a judgment pending such appeal. It is final for the purpose of appeal, and remains final until reversed or modified in accordance with the state procedure. The mere taking of an appeal does not take away its final character.

"The rule is well settled and of long standing that a judgment or decree to be final, within the meaning of that term as used in the acts of Congress giving this court jurisdiction on appeals and writs of error, must terminate the litigation between the parties on the merits of the case, so that, if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered. Whiting v. Bank of United States, 13 Pet. 6 [10 L. Ed. 33]; Forgay v. Conrad, 6 How. 201 [12 L. Ed. 404]; Craighead v. Wilson, 18 [How.] Id. 199 [15 L. Ed. 332]; Beebe v. Russell, 19 How. Id. 283 [15 L. Ed. 668]; Bronson v. Railroad Co., 2 Black, 524 [17 L. Ed. 347]; Thomson v. Dean, 7 Wall. 342 [19 L. Ed. 94]; St. Clair County v. Lovingsston, 18 [Wall.] Id. 628 [21 L. Ed. 813]; Parcels v. Johnson, 20 [Wall.] Id. 653 [22 L. Ed. 410]; Railroad Co. v. Swasey, 23 [Wall.] Id. 405 [23 L. Ed. 136]; Crosby v. Buchanan [23 Wall.] Id. 420 [23 L. Ed. 138]; Commissioners v. Lucas, 93 U. S. 108 [23 L. Ed. 822]. It has not always been easy to decide when decrees in equity are final within this rule, and there may be some apparent conflict in the cases on that subject, but in the common-law courts the question has never been a difficult one. If the judgment is not one which disposes of the whole case on its merits, it is not final." Bostwick v. Brinkerhoff, 106 U. S. pp. 3 and 4, 1 S. Ct. 15, 16 (27 L. Ed. 73).

Here the pleadings submitted defined the issue. The case was duly tried so far as this court can determine. The merits were determined by the justice and jury, constituting the court, having jurisdiction. Ex parte Watkins, 3 Pet. (28 U. S.) 193, 7 L. Ed. 650. It was final for the purpose of taking an appeal. Fuentes v. Mayorga, 7 Daly (N. Y.) 103.

[2] The right of an appeal is not inherent. It is purely a matter of statute. It did not exist at common law. Evansville & T. H. R.

Co. v. Terre Haute, 161 Ind. 26, 67 N. E. 686; National Bank v. Peters, 144 U. S. 570, 12 S. Ct. 767, 36 L. Ed. 545.

[3] The Civil Practice Act of New York defines "judgments" as either "final" or "interlocutory." Civil Practice Act, § 472. Certainly the judgment in question cannot be considered "interlocutory" simply because an "appeal" has been taken.

The state court has stated the difference between a "final" judgment and one that becomes "conclusive" as follows: "The term 'final judgment' is susceptible of two significations, one of which, in a strict legal sense, is its true meaning. It is a determination of the rights of the parties after a trial whether such is the subject of review or not, and the other is its colloquial use or signification, which makes it synonymous with 'decisive,' or a judgment that cannot be appealed from, and which is perfectly conclusive upon the matter adjudicated. * * * Dean v. Marschall, 90 Hun, 335 [338], 35 N. Y. S. 724, 725." 3 Words and Phrases, First Series, 2777.

Certainly Congress did not intend by its broad language that such a bar must exist as a "conclusive" judgment before other creditors could claim that a preference had been, or was about to be, obtained. A "final" judgment would plainly be sufficient.

[4] "Proceedings in bankruptcy generally are in the nature of proceedings in equity." Bardes v. Bank, 178 U. S. 524, 20 S. Ct. 1000, 44 L. Ed. 1175. It has been held recently that a state judgment is sufficient in this court, in equity, to prove the existence and amount of the indebtedness. Hatch v. Morosco (C. C. A. 2d) 19 F.(2d) 766, decided May 9, 1927.

The plaintiffs have appealed from said judgment, and said appeal is still pending, but no attempt to pay the judgment or to stay execution has been made. Civil Practice Act, § 614.

The plaintiffs claimed on said state trial, and now claim, that the defendant in said action owed them some $10,000; that this claim constituted, and now constitutes, sufficient assets to render them solvent; that because of said appeal pending there has been no final judgment entered. In arguing thus, they give little importance to the judgment roll duly filed in the state court.

[5] There is no statute that I am aware of that gives this federal court the right to act as a court of review over suits and proceedings of a state court. There is no constitutional question involved. The state appellate courts constitute the forum for such discussion.

This court therefore is not concerned with alleged errors, which may or may not be found in a state trial. It will content itself with taking the judgment as duly and properly found and entered and as final until the contrary appears in the course of orderly procedure.

This disposes of the main contention of the parties, but is far from disposing of the real question in the case.

Aside from the burden of proof resting on an alleged bankrupt (section 3[d], Bankruptcy Act [Comp. St. § 9587]), I understand that it is conceded that, if said judgment disposed of the claim by said plaintiffs against Janowitz, there are no other assets, and that both the partners and the partnership are, and were, otherwise insolvent at the the times in question.

The involuntary petition was duly filed in this court on May 3, 1927. This was some three months after Janowitz had recovered his judgment.

The petition seeks to have the copartnership, as well as the individual partners, adjudicated bankrupt on the ground that they each are insolvent, owe debts to the amount of over $1,000, etc., and have committed acts of bankruptcy. Janowitz alleges that he is a creditor having a provable claim of over $500, that he has not received a preference, sets forth the aforesaid judgment in his favor for $7,300, and that, while insolvent, these alleged bankrupts committed certain acts of bankruptcy.

In the case of Joseph Maryanov the alleged act is that he, while insolvent, suffered and permitted a certain creditor to obtain, on or about March 22, 1927, a judgment against him in the sum of approximately $800, which judgment was docketed in the state court, New York county, and that he has not vacated or discharged the same, etc.

This act of bankruptcy is confined solely to the individual Joseph Maryanov. It was not a partnership matter, nor can it be construed as against the partnership or Jacob Maryanov.

[6] In his case, therefore, we have a petition in bankruptcy filed against an insolvent person by a large creditor who proves that while insolvent the alleged bankrupt suffered or permitted another creditor, to the extent of some $800, to obtain through legal proceedings a judgment which he has not vacated or discharged within 30 days from the date of such judgment.

Prior to May 27, 1926, the bankruptcy law contained but one so-called "passive" act of bankruptcy. This was where a bankrupt, while insolvent, had a judgment entered against him, and did not at least five days before a sale or final disposition of any property affected vacate or discharge the preference which the judgment creditor had thus secured. Intent was not involved. In re Musgrove (D. C.) 234 F. 99. Nor did the debtor have to do anything to aid the creditor in getting such preference (In re Rung Furniture Co. [C. C. A.] 139 F. 526), and the creditor would obtain an enforceable preference, if I may use that term, if the statutory time was not taken advantage of by other creditors. Citizens' Bank v. Ravenna Bank, 234 U. S. 360, 34 S. Ct. 806, 58 L. Ed. 1352.

However, after May 27, 1926, a new and additional "passive preference" has been made an act of bankruptcy. This is contained in chapter 3, § 21a (4), and reads as follows: "Acts of bankruptcy by a person shall consist of his having: (4) suffered, or permitted, while insolvent any creditor to obtain through legal proceedings any * * * judgment * * * and not having vacated or discharged the same within 30 days from the date such * * * judgment * * * was obtained." U. S. Code Ann. Title 11, § 21a(4).

Comparing this new amendment with the previous law, it would seem that the object aimed at is still to prevent a preference. A man may be insolvent and do nothing, and yet become a voluntary bankrupt, and this same man, although he owes a large sum of money, and is insolvent, cannot be "put" in bankruptcy, unless he commits an act of bankruptcy.

The purpose of the bankruptcy law is to fairly distribute the assets according to the law.

Where a debtor seeks to select, and prefer, and make his own manner of distribution, then the other creditors can compel a lawful distribution, and creditors who were about to benefit by this design or result can be prevented, in the interest of the many, by a fair distribution of the estate as laid down by Congress.

Congress thought that they had met this question by the former chapter 3, § 21a, subsection (3) with its five days' period proposed sale, etc., but it was found unavailing in some cases. Hence Congress extended this idea of prevention of a preference by adding the subsection (4) above mentioned.

An interesting comment on this amendment is set forth by Ralph F. Colins in 26 Columbia Law Review, No. 7, November, 1926, where he says:

"Among the most important of the new

amendments are the changes in paragraph 3 (a) relating to acts of bankruptcy. Of primary importance is the provision, by paragraph 3 (a) (4), for an entirely new act when a person shall have 'suffered, or permitted, while insolvent, any creditor to obtain through legal proceedings any levy, attachment, judgment or other lien, and not having vacated or discharged the same within 30 days from the date such levy, attachment, judgment, or other lien was obtained.' The importance and necessity for this provision, in order to overcome the deficiencies of paragraph 3 (a), is clearly stated by Hon. Earl C. Michener, of Michigan, chairman of the house committee on the Judiciary, in his exposition of the amendments to his colleagues."

"Under existing law a creditor may obtain judgment against a debtor and hold that judgment for four months and one day, and it becomes a lien entitled to priority under the laws of the State if the debtor subsequently goes into bankruptcy; that is, the lien has been permitted to ripen into a preference, giving the creditor advantage over other creditors and defeating one of the fundamental principles of equality among creditors.

"It will be observed that the debtor must be insolvent, the idea being that the insolvent estate during the term of four months shall be protected against seizures as well as against preferential payments out of the estate. Mr. Montgomery, an attorney for the National Credit Men's Association, and who is an authority on the bankruptcy law, said at the hearings:

"The necessity for that proposition is to be found in a case decided by the United States Supreme Court, Citizens' Bank v. Ravenna National Bank, 234 U. S. 360 [34 S. Ct. 806, 58 L. Ed. 1352]. (1926) 67 Cong. Rec. 7523. See, also, Id. 7525."

[7, 8] It seems to me, therefore, and the purpose of this discussion is to show, that the said new amendment has not really changed the purpose of the law except to make unnecessary, in certain cases, a proposed sale, etc., by a debtor. It is still the conclusive likelihood of obtaining a preference that is the object legislated against, and which constitutes an act of bankruptcy, opening the door to the other creditors to share in their debtor's assets. If this is so, then cases which I am about to cite apply with equal force to the law as now amended. It has been decided in a number of cases that a petitioning creditor cannot obtain a preference, and then by reason of same seek to have his debtor adjudicated a bankrupt. The estoppel of such a

creditor has been upheld by leading textwriters as well. In re Weiss (D. C.) 142 F. 279; In re Taylor House Association (D. C.) 209 F. 924, where Judge Ray says, at page 931, "but a good intention will not justify a creditor in procuring his debtor to commit an act of bankruptcy and permit him thus to become a petitioner and allege such act as the basis of an adjudication." Remington on Bankruptcy (1923 Ed.) § 244; Collier (1925 Ed.) p. 1220 (h).

This is not a case of an intervening petition such as In re Freeman Co. (D. C.) 212 F. 551, and it is not a case where an intentional preference is given as In re Freeman Co. (D. C.) 212 F. 548.

To be sure Janowitz in his petition alleges that he has not received a preference, and, so far as I can see, he is the only creditor of the partnership and of Jacob Maryanov, yet the act of bankruptcy which contemplates, as I have said, the giving of a preference, rests solely on his act in obtaining the judgment which will constitute the actual or potential preference.

It does not seem to me that any case that I have been able to discover goes to the extent of allowing such a creditor under such circumstances to avail himself of the National Bankruptcy Act.

[9] Aside from the possible result of bankruptcy decree on the creditor's judgment, I am somewhat at a loss to understand why a sole judgment creditor, such as Janowitz is, and in the absence of any stay, should not avail himself of the various remedies of the state court open to a judgment creditor. The bankruptcy court is not a mere additional remedy, in the nature of supplementary proceedings, to an execution in the state court. Its whole purpose and procedure is in the nature of a general suit in equity, contemplating not aid to a single creditor but to all the creditors.

On the record before me I see nothing that the petitioner can get in bankruptcy that he could not properly get in the state court against his judgment debtors.

I consider this act of bankruptcy alleged to have been committed by the copartnership and the partners one that this particular judgment creditor is prevented from using.

The only remaining act of bankruptcy alleged against the copartnership and the individuals needs but brief notice. It is, in substance, that the alleged bankrupts long ago transferred and concealed certain property. No real importance seems to have been given to this on the trial as an act of bankruptcy,

but as it is alleged in the petition I mention it. This is an equity proceeding.

[10] It seems that some three or four years ago certain property is alleged to have been transferred by the alleged bankrupts to their wives. Counsel for Janowitz argues that he had a claim in 1921 for work, labor, and services. It has now been reduced to judgment in 1927. Assuming that this is so, there is no reason shown by Janowitz why he delayed so long in enforcing it or in waiting until he in turn was sued. Aside from this, there is no proof now before me which indicates, even in a prima facie way, that there was any illegal transfer or concealment or any intent to hinder or delay Janowitz within the scope and intention of the National Bankruptcy Act.

To sum the whole matter up, therefore, we have here an involuntary petition filed against a copartnership and the individuals composing same.

[11] It still seems to be the law that in bankruptcy matters the individual and the partnership are "entities" separate and distinct from each other. In re Meyer (C. C. A.) 98 F. 976, with distinctions; In re Samuels (C. C. A.) 215 F. 845.; In re Fuller (C. C. A.) 9 F.(2d) 557; Francis v. McNeal, 228 U. S. 695, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706.

The liability of Joseph Maryanov individually to Janowitz by reason of the latter's judgment is established. Francis v. McNeal, supra.

The result of a trial in a bankruptcy court may properly result in individual liability instead of partnership liability. Section 5, subd. (h), Bankruptcy Act (Comp. St. § 9589).

Accordingly, as to Joseph Maryanov, there is sufficient proof that, while insolvent, he committed an act of bankruptcy, in that, he allowed said $800 judgment to be recovered against him and remain unsatisfied and discharged, etc., all of which is within the recent amendment to the Bankruptcy Act. The sole petitioner is a creditor of some $7,000, and the creditors are less than twelve in number.

The decree should therefore go against Joseph Maryanov, adjudicating him a bankrupt. Whether or not he has any assets is not the concern of the court at this time.

[12] As to the copartnership and Jacob Maryanov, while they are insolvent, such insolvency alone is insufficient. Citizens' Bank v. Ravenna Bank, 234 U. S. 360, p. 365, 34 S. Ct. 806, 58 L. Ed. 1352. The only judgment against them is the judgment obtained by the sole petitioning creditor. This cannot

be availed of by such creditor as an act of bankruptcy by the alleged bankrupts.

There has been no attempt made by Janowitz actually or by offer in his petition to give up any of his actual or possible preference. I do not now pass upon the right of other creditors, if any, to subsequently avail themselves of this judgment by Janowitz in some other proceedings. Such proof or issue is not before me.

There has been no act of bankruptcy proved in this case. The petition against the co-partnership and Jacob Maryanov must be dismissed.

While I do not feel that the record of supplementary proceeding examinations are strictly competent, I have admitted the signed and sworn affidavit of Joseph Maryanov; there being no specific objection that in his absence his sworn statements should not be received. The matter contained therein, however, is of slight consequence here.

As to the statements made by the other parties such as the wives and an attorney for a corporation, I reject same as incompetent and not binding on any of the parties in this suit. In each case an exception is granted to counsel.